**UNITED STATES of America ex rel. Louis E. BENNETT, Appellant,**

**v.**

**David N. MYERS, Superintendent.**

**No. 16287.**

United States Court of Appeals Third Circuit.

Argued April 21, 1967.

Decided July 27, 1967.

---

Robert Alan Lukens, Michael Churchill, Fred B. Lovitch, Philadelphia, Pa., for appellant.

Gordon Gelfond, Asst. Dist. Atty., Philadelphia, Pa. (Alan J. Davis, Asst. Dist. Atty., Chief, Appeals Division, Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Before SMITH and FREEDMAN, Circuit Judges, and WORTENDYKE, District Judge.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

Relator, after exhausting his state remedies, applied for a writ of habeas corpus in the district court. After an evidentiary hearing the district judge denied the petition [1] but granted a certificate of probable cause under 28 U.S.C. § 2253.

Relator was charged in the Philadelphia Court of Quarter Sessions with separate acts of aggravated robbery in four bills of indictment. In three of these he was indicted with a codefendant, one Wilson, and in the fourth indictment was charged alone. On February 28, 1958, he pleaded guilty to the first three indictments and on March 20, 1958, after a trial by a judge without a jury was found guilty on the fourth charge. Shortly thereafter successive sentences were imposed on the four indictments.

Relator's able court-appointed counsel have presented a number of attacks on the judgments.

### I.

At the trial on the fourth indictment, the court admitted in evidence the identification of the relator by the victim of the holdup, who had previously identified him in a police lineup in which he was forced to appear against his will and was denied permission to have his counsel present. There had been a number of lineups, at least one of which was held after his arraignment.

■ At the time of the argument before us, when relator pressed the unconstitutionality of the refusal to permit counsel at the lineups, the Supreme Court had not yet passed specifically on the question.[2] Since then, on June 12, 1967, the decisions were announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, which held that an accused is entitled to the attendance of his counsel at a police lineup. But the Supreme Court also decided in the companion case of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), that the doctrine of the *Wade* and *Gilbert* cases is prospective only and its application is limited to cases in which lineups without counsel occurred after June 12, 1967. Since the lineups here occurred many years prior to *Wade* and *Gilbert*, the doctrine which they announced prospectively is inapplicable to the relator.

■■ Relator is not precluded, however, from inquiry into the "totality of the circumstances" surrounding the lineups in order to determine whether the procedures were so unfair as to deprive him of a fair trial. Stovall v. Denno, supra at 302, 87 S.Ct. 1951; and see Palm-

---

1. The opinion of the district judge is unreported.

2. For our cases on the subject of lineups at that time see King v. Pinto, 376 F.2d 593 (3 Cir. 1967); United States v. Chibbaro, 361 F.2d 365 (3 Cir. 1966);

United States v. Evans, 359 F.2d 776 (3 Cir.), cert. denied, 385 U.S. 863, 87 S. Ct. 120, 17 L.Ed.2d 90 (1966); Rigney v. Hendrick, 355 F.2d 710 (3 Cir. 1965), cert. denied, 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685 (1966).

er v. Peyton, 359 F.2d 199 (4 Cir. 1966), cited with approval in *Stovall* at 302 of 387 U.S., 87 S.Ct. 1967. But he does not allege that the totality of the circumstances surrounding his lineups was fundamentally unfair and the record discloses no unfairness in the procedures employed once the validity of the lineup is accepted, as it must be. He never appeared alone in a lineup, nor did the police make any suggestions conducive to mistaken identification to witnesses. He was indeed required to repeat the words allegedly spoken by the holdup man, but the same requirement was imposed on the others in the lineup, and the Supreme Court has decided that this does not constitute either an invasion of constitutional rights, United States v. Wade, supra at 221 of 388 U.S., 87 S.Ct. 1926, or fundamental unfairness, Stovall v. Denno, supra at 302 of 388 U.S., 87 S.Ct. 1967.

Relator's claim therefore falls with the rejection by the Supreme Court of a retroactive application to the doctrine of *Wade* and *Gilbert*.

## II.

On February 26, 1958, the case against relator and his codefendant, Wilson, on the first three indictments was called for trial. Wilson's counsel appeared, but relator's counsel was absent because of illness. The record shows that relator's case was informally continued and that the trial judge then accepted Wilson's change of plea to guilty. The judge thereupon heard the evidence of a police officer who read Wilson's confession which repeatedly mentioned relator as an accomplice in the three robberies. During the reading of the confession the prosecutor emphasized on several occasions relator's participation in the robberies. Two days later, on February 28, 1958, relator appeared with his counsel before the same judge. With the advice of his counsel, whom he had told of the events of February 26, relator changed his plea to guilty to the first three indictments, without any reference to the prior proceedings or any indication that they had in any way influenced the pleas of guilty.

In these circumstances there is no merit in relator's claim that his plea of guilty was the result of his deprivation of counsel two days earlier. On the contrary, the record clearly shows that there were no proceedings against him on the prior occasion, which was limited to Wilson's change of plea and the taking of some evidence dealing with the sentence to be imposed upon him. It was entirely appropriate for the judge at that time to elicit whatever information was available relating to Wilson's sentence. In any event, even if there had been any impropriety in the earlier proceeding, relator waived it when he entered his plea of guilty voluntarily and with the advice of counsel who had full knowledge of the facts. United States ex rel. Maisenhelder v. Rundle, 349 F.2d 592 (3 Cir.1965).

## III.

Relator argues that the judge who presided at his trial on the fourth indictment was disqualified because he had heard Wilson's confession implicating him at the hearing on Wilson's plea of guilty.

 Relator's trial, however, was conducted without any reference to the prior proceedings and his conviction rested on substantial evidence against him. We cannot presume that the trial judge was influenced by extraneous considerations in judging whether relator was guilty of the crime for which he was being tried. See Dove v. Peyton, 343 F. 2d 210 (4 Cir.1965); United States ex rel. Berkery v. Myers, 242 F.Supp. 515 (E.D.Pa.1965).

 Moreover, Wilson's confession incriminated relator on the three charges for which they were jointly indicted, but did not relate to the offense for which he was being tried alone on the separate indictment. It is everyday practice for a judge to accept a plea of guilty of one or more defendants and proceed with the trial of a codefendant who maintains his innocence. It is equally customary to hear information dealing with sentence where a number of defendants have been convicted. In such circumstances the

trial judge must keep separated in his mind the evidence which affects the guilt of one and not the other defendants and the information which goes to the sentence of one and not the others. It is impossible for a trial judge and even a jury in criminal as well as in civil cases to be insulated from information which is legally appropriate as to some but not all of the parties. There would be a complete breakdown in the operation of the machinery of justice if we refused to recognize the capacity of a trial judge to put aside what he has heard if it is not legally relevant to the case.

■ Indeed, the circumstances in the present case make it clear that both relator and his counsel must have believed that there was no danger of the trial judge having been prejudiced because he had heard Wilson's confession implicating the relator in the three offenses which were extraneous to the trial. They both knew that the confession had been read to the judge on Wilson's plea of guilty, yet relator not only pleaded guilty two days later to the three charges in which he was jointly indicted with Wilson, but almost a month later on March 20, 1958, at the trial on the fourth charge waived a jury trial and chose to have the issue of his guilt or innocence determined by the same judge. This action is an acknowledgment by relator and his counsel that they themselves did not believe that the trial judge had been prejudiced against him.

## IV.

■ At the trial on the fourth charge the victim of the robbery described the appearance of the holdup man and specifically identified relator as the guilty party. Relator, testifying in his own behalf, denied that he was present at the scene of the crime. After this denial, his counsel inquired if he could say what he was wearing on that date. Relator now claims that the trial judge's interjection at this point denied him a fair trial. The interjection was brief and its language and the setting in which it occurred follows:

"Question: Could you tell me what you were wearing on the date of December 28, 1957?

"The Court: You have a categorical denial. What more do you need? There is one more question.

By The Court:

Q. Did you do this? Did you hold this man up?

A. No, I didn't, your Honor." [3]

At this point relator's counsel ended the direct examination and turned him over for cross-examination. The record shows no objection by relator's counsel, no indication of any disagreement with the trial judge's expression that nothing further was needed, nor any indication that counsel was dissatisfied with the trial judge's eliciting in lieu of the description of clothing a direct denial that relator had committed the crime.

Relator seeks to strengthen his claim by reference to an additional element. He now argues that he was prepared to have his mother and sister testify that he owned no clothing resembling that which the eyewitness described. But the difficulty with this contention is that relator did not even suggest at the trial that his mother or sister was available as a witness to this effect.

The record therefore does not permit acceptance of the claim that the trial judge deprived relator of his right to testify on his own behalf or that he denied him a fair trial.

The judgment of the district court will be affirmed.

3. Transcript, pp. 23–24.