**Rogelio GUTIERREZ, Petitioner-Appellee,**

**v.**

**W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellant.**

**No. 72–3570**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

March 1, 1973.

Rehearing Denied May 10, 1973.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Crawford Martin, Atty. Gen., Gilbert J. Pena, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Rogelio Gutierrez, Servanndo Gonzalez, McAllen, Tex. (Court-Appointed), for petitioner-appellee.

Before BELL, GODBOLD and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Rogelio Gutierrez is a prisoner of the State of Texas, having been convicted of assault with intent to murder without malice. Upon proof of two prior felony convictions, his sentence was enhanced to life imprisonment under Art. 63 of the Texas Penal Code. Asserting that the prior convictions were constitutionally infirm under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and thus inadmissible for enhancement, Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), Gutierrez has sought relief in the state, Gutierrez v. State, 456 S.W. 2d 84 (Tex.Cr.App.1970), and federal courts.

On direct appeal of the assault case, Gutierrez v. State, *supra*, the Texas Court of Criminal Appeals held Gutierrez bound by the record entries of the prior convictions—that he had appeared in person and by counsel. In state habeas corpus proceedings, Gutierrez was unable to secure a hearing, the last ·being denied by the Texas Court of Criminal Appeals without written order. Having exhausted available state remedies, Gutierrez petitioned the Federal district court for habeas corpus relief.

The district court, faced with allegations of a state's use of assertedly unconstitutional convictions for the enhancement of a conviction and without the benefit of an adequate state court hearing, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), properly put the state to its burden of defending the prior enhancing convictions. Craig v. Beto, 458 F.2d 1131 (5th Cir., 1972); Reed v. Henderson, 463 F. 2d 485, 487, at note 2 (5th Cir., 1972). A minute entry alone is insufficient to prove previous representation by counsel or the waiver thereof. Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); Dulin v. Henderson, 448 F. 2d 1238 (5th Cir., 1971).

An evidentiary hearing was held which produced testimony that Gutierrez's prior convictions had both resulted from his counseled pleas of guilty. Counsel appointed for the habeas corpus hearing, however, developed a constitutional infirmity in the prior convictions. The testimony and record entries of the two prior convictions do not disclose an appearance by counsel at sentencing, nor were either of his two attorneys able after so many years to recall whether they had in fact been present at the imposition of the respective sentences. Gutierrez, however, testified, with familial corroboration, that he had stood sentencing unrepresented.

Despite the probabilities against Gutierrez's having twice been unrepresented at separate sentencings, the district court held the ambiguous record sufficient to establish that Gutierrez had in fact been unrepresented at the allocution of sentence. Relying on *Burgett, supra*; Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), and Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1947), the district court reasoned that a lack of counsel at sentencing (whose presence is required by *Mempa, supra*) invalidated a record of conviction such that it could not be used for enhancement. Accordingly, it held the enhanced sentence invalid and on the authority of United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), ordered Gutierrez resentenced without recourse to the two prior felony convictions. The State of Texas appeals.

On appeal the state argues that the use of prior convictions does not taint the jury's imposition of life imprisonment because the prior sentences at issue were the result of plea bargains. A plea bargain, the state asserts, removes from the state sentencing judge any discretion, thereby rendering the imposition of sentence a ministerial act at which counsel is not required. Williams v. Beto, 354 F.2d 698 (5th Cir., 1965); Fairris v. Beto, 446 F.2d 1290 (5th Cir., 1971). The district court correctly replied to this argument:

"Although recognizing that sentencing is a critical stage of all criminal proceedings, the Fifth Circuit Court of Appeals has held that if the sentencing of a defendant is a mere ministerial act, that the absence of counsel at the sentencing does not require reversal of the conviction. Williams v. Beto, 354 F.2d 698 (CA5, 1965). The Honorable Judge Carl O. Bue, Jr. of this District, in an opinion that was affirmed and adopted by the Court of Appeals, held that the *Mempa* decision was not controlling in a case in which a jury had set the term to be served and the defendant was not represented by counsel at sentencing. Fairris v. Beto, 446 F.2d 1290 (CA5, 1971). The sentencing being one of a merely mechanical nature, the Court stated that the petitioner had failed to show how he was prejudiced by the lack of counsel. It is to be noted that Judge Bue specifically refrained from deciding the issue of whether counsel was required at sentencing, due to the mechanical nature of the sentencing in the particular case.

"It would appear that this case is of a different nature as regards sentencing. Certainly the sentencing process in the burglary and robbery causes herein may not be characterized as ministerial. The Judge was endowed with ample leeway in assessing the sentences, regardless of any bargain between the defendant's attorney and the prosecutor. Tex.Pen.Code Ann.,

Arts. 1397, 1408 (1953); Tex.Code Crim.P.Ann., Art. 42.12 (1966)."

We need only add the sad commentary based on the number of appeals to this court which assert that plea bargains have not been kept; e. g., Hilliard v. Beto, 465 F.2d 829 (5th Cir., 1972), rehearing en banc granted December 1, 1972; Gallegos v. United States, 466 F.2d 740 (5th Cir., 1972), rehearing en banc granted December 1, 1972. Experience has demonstrated that a plea bargain does not render imposition of sentence into a ministerial act for application of the *Williams* or *Fairris* cases. The state's argument also fails to discern the distinction between cases directly reviewing sentences obtained without counsel at sentencing and cases challenging the use of those convictions for enhancement. See text and note 2, *infra*.

Given the ambiguous record of representation presented the district court, it properly found that the sentences imposed in the two enhancing convictions were invalid. Burgett v. Texas, *supra*; Mempa v. Rhay, *supra*; Townsend v. Burke, *supra*. The court then, however, took a quantum leap by holding the sentencing deficiencies invalidated the record of the underlying convictions when used for enhancement. The leap was unwarranted and we reverse.

Sentencing, like other pretrial and trial proceedings, is a critical stage in the criminal process at which counsel is required, Mempa v. Rhay, *supra*; Townsend v. Burke, *supra*, but the defect is not one which goes to the validity of a judgment of conviction. Rather it is one which goes to the sentence imposed. United States v. Tucker, *supra*. A reading of the Supreme Court's opinions on the Sixth Amendment right to counsel, culminating in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), makes it clear that the integrity of the fact finding determination of guilt is at issue. Thus, in

Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Court rejected the notion that counsel was not required in a capital case and said:

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect." 287 U.S. at 68–69, 53 S.Ct. at 64.

Then in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the Court declared:

"[The Sixth Amendment] embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is [re]presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer—to the untrained layman—may appear intricate, complex and mysterious." 304 U.S. at 462–463, 58 S.Ct. at 1022.

Expanding the right of counsel to indigent state defendants, the Court in Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963), proclaimed:

"[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." 372 U.S., at 344, 83 S.Ct. at 796.

Applying the right to counsel to a juvenile proceeding in which incarceration was a possibility, the Court in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L. Ed.2d 527 (1966), stated:

" * * * A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems

of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The ·child 'requires the guiding hand of counsel at every step in the proceedings against him.'" 387 U.S. at 36, 87 S.Ct. at 1448.

Affording another form of retroactivity to *Gideon* by proscribing the use of invalid convictions for enhancement, the Court in *Burgett* held:

"Still another is illustrated by Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. In that case we held that a transcript of a preliminary hearing had to be excluded from a state criminal trial because the defendant had no lawyer at that hearing, and did not, therefore, have the opportunity to cross-examine the principal witness against him who since that time had left the State. The exclusionary rule that we fashioned was designed to protect the privilege of confrontation guaranteed by the Sixth Amendment and made applicable to the States by the Fourteenth.

"The same result must follow here. Gideon v. Wainwright established the rule that the right to counsel guaranteed by the Sixth Amendment was applicable to the States by virtue of the Fourteenth, making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one. And that ruling was not limited to prospective ap-

plications. See Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650; Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41. In this case the certified records of the Tennessee conviction on their face raise a presumption that petitioner was denied his right to counsel in the Tennessee proceeding, and therefore that his conviction was void. Presuming waiver of counsel from a silent record is impermissible. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70. To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense (see Greer v. Beto, 384 U.S. 269, 86 S.Ct. 1477, 16 L.Ed.2d 526) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right." 389 U.S. at 114–115, 88 S.Ct. at 262.

See also, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601;[1] Moore v. Michigan, 355 U.S. 155, 78 S. Ct. 191, 2 L.Ed.2d 167 (1957); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); and Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955).

The underlying principle of the need for counsel carries through the time of sentencing as is shown by the Supreme

[1]. "Finally, in each of the three areas in which we have applied our rule retrospectively [20] the principle that we applied

"[20]. In Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, *supra,* the appeal which was denied because of lack of funds was 'an integral part of the [State's] trial system for finally adjudicating the guilt or innocence of a defendant.' [1 At 1S.] At 18 of 351 U.S., 76 S.Ct. at 590. Precluding an appeal because of inability to pay was analogized to denying the poor a fair trial. In Gideon v. Wainwright, *supra,* we recognized a fundamental fact that a layman, no matter how intelligent, could not possibly further his

claims of innocence and violation of previously declared rights adequately. Because of this the judgment lacked reliability. In Jackson v. Denno, *supra,* the holding went to the basis of fair hearing and trial because the procedural apparatus never assured the defendant a fair determination of voluntariness. In addition, Mr. Justice White expressed grave doubts regarding the ability of the jury to disregard a confession found to be involuntary if the question of guilt was uncertain."
went to the fairness of the trial—the very integrity of the fact-finding process." 381 U.S. at 639, 85 S.Ct. at 1743.

Court's decision in United States v. Tucker, supra:

"In Burgett we said that '[t]o permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case.'" 404 U.S. at 449, 92 S.Ct. at 593.

The Court's subsequent holding in Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), makes it even more evident that it is the reliability of the counsel-less guilt determination and not the length of sentence which is the significant factor to the resolution of our case.

"The Tucker case involved only that aspect of Burgett that prohibits the use of invalid prior convictions to 'enhance punishment.' The case now before us involves the use of such convictions 'to support guilt.' For the issue of innocence or guilt in this case turned entirely on whether the jury would believe the testimony of an 8-year-old girl or that of Loper. And the sole purpose for which the prior convictions were permitted to be used was to destroy the credibility of Loper's testimony in the eyes of the jury.

"Unless Burgett is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under Gideon v. Wainwright to impeach a defendant's credibility deprives him of due process of law. We can put the matter no better than in the words of the Court of Appeals for the First Circuit:

"'We conclude that the Burgett rule against use of uncounseled convictions "to prove guilt" was intended to prohibit their use "to impeach credibility," for the obvious purpose and likely effect of impeaching the defendant's credibility is to imply, if not prove, guilt. Even if such prohibition was not originally contemplated, we fail to discern any distinction which would allow such invalid convictions to be used to impeach credibility. The absence of counsel impairs the reliability of such convictions just as much when used to impeach as when used as direct proof of guilt.' Gilday v. Scafati, 428 F.2d 1027, 1029." 405 U.S. at 482–483, 92 S.Ct. at 1018–1019.

Compare Worts v. Dutton, 395 F.2d 341, 344–345 (5th Cir., 1968), and Martin v. United States, 182 F.2d 225 (5th Cir., 1950).

■ Mempa v. Rhay, supra, and Townsend v. Burke, supra, upon which the district court relied, while together requiring the presence of counsel at sentencing, do so to protect rights significant to that phase of the proceeding and not to the previous determination of guilt. Mempa v. Rhay, supra, 389 U.S. at 135, 88 S.Ct. 254; Worts v. Dutton, supra; Martin v. United States, supra. Nor does McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) require a different result.

While the district court noted that on rare occasion information obtained after conviction but before sentencing, when presented at sentencing, has induced a trial court to vacate an adjudication of guilt or impose a lenient sentence, those considerations support the conclusion that counsel at sentencing is fundamental and do not necessitate striking every record of conviction when used for enhancement in which sentencing occurred without counsel.

■ Unlike Burgett or Tucker the guilt of Gutierrez in the enhancing convictions was determined in proceedings which were not constitutionally infirm; nor is it asserted that the conviction for assault is constitutionally infirm. The imposition of sentence in the two enhancing proceedings has been found to have been infirm for lack of counsel, but those sentences are not themselves before us. Any attack on the enhancing convictions must be collateral. Craig v. Beto, supra. Thus, we look not at the length of the sentences imposed in the prior convictions, but to the fact of the convictions and their constitutional

validity.[2] We hold that prior felony sentences which could be subject to attack for failure of counsel to appear at sentencing do not nullify the fact of the underlying conviction when used for enhancement. United States v. Tucker, *supra*. Indeed, the language of Texas's habitual criminal statute, Art. 63, Texas Penal Code, looks only to the fact of prior convictions:

> "Whoever shall have been three times convicted of a felony less than capital shall on the third conviction be imprisoned for life in the penitentiary."

See Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

The judgment of the district court ordering that Gutierrez be resentenced without regard to the enhancing convictions is vacated and the cause remanded for further proceedings not inconsistent herewith.

Vacated and remanded

---

2. We must be careful to distinguish Gutierrez, a situation where lack of counsel at prior sentencings infect a proceeding in which they are used for enhancement of a present sentence, from cases which directly review an infirm sentence, Martin v. United States, 182 F.2d 225 (5th Cir.,

1950); Ex parte Vestal, 468 S.W.2d 372 (Tex.Cr.App., 1971), or in which a prisoner is prejudiced by the imposition of sentence under a statute other than the one defining the offense. Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L. Ed.2d 326 (1967).